IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Caitlyn M., ) | |
| ) | |
|     *Plaintiff*, ) | |
| ) | Case No. 21-cv-50045 |
| v. ) | |
| ) | Magistrate Judge Lisa A. Jensen |
| Kilolo Kijakazi, ) | |
| Acting Commissioner of Social Security,[1] ) | |
| ) | |
|     *Defendant*. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Caitlyn M. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying her disability insurance benefits.[2] For the reasons set forth below, the Commissioner's decision is reversed, and the case is remanded.

**I. Background**

On November 19, 2018, Plaintiff filed for Social Security disability benefits alleging disability beginning on June 30, 2012 based on various mental health related impairments.[3] Plaintiff's claims were denied on initial and reconsideration determinations. Thereafter, Plaintiff requested a hearing which she and her counsel attended on September 10, 2020. Thereafter, ALJ Cynthia Bretthauer issued an unfavorable opinion. R. 10-33. Plaintiff appealed to the Appeals

---

[1] Kilolo Kijakazi has been substituted for Andrew Marshall Saul. Fed. R. Civ. P. 25(d).
[2] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c).
[3] Plaintiff filed concurrent applications for SSDI and SSI benefits. On her applications Plaintiff stated she had been disabled since June 30, 2012, which is her date last insured for purposes of SSDI benefits. Plaintiff did not have psychiatric treatment prior to 2012; therefore, Plaintiff does not challenge the ALJ's finding that there was insufficient evidence to find Plaintiff disabled for purposes of her SSDI application.

Council, which denied her request for review on December 23, 2020. R. 1-6. The instant appeal followed.

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (citations omitted). The reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

## III. Discussion

Plaintiff's appeal focuses on the narrow issue of whether the ALJ conducted an appropriate listing analysis. A claimant is eligible for benefits if she has an impairment that meets or equals an impairment found in the listing of impairments. 20 C.F.R. § 404.1520(d). The listings specify the criteria for impairments that are considered presumptively disabling. § 404.1525(a). A claimant may also demonstrate presumptive disability by showing that her impairments are accompanied by symptoms that are equal in severity to those described in a specific listing. § 404.1526(a). Therefore, at step three of the sequential evaluation process, in "considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer

more than a perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)); *accord Jeske v. Saul*, 955 F.3d 583, 588 (7th Cir. 2020). However, the ALJ's decision must be read as a whole and an ALJ's RFC analysis may doubly explain how the evidence shows that the claimant is not presumptively disabled under the pertinent listing. *Jeske*, 955 F.3d at 590; *see also Zellweger v. Saul*, 984 F.3d 1251 (7th Cir. 2021). To demonstrate that an ALJ's listing conclusion was not supported by substantial evidence, the claimant must point to evidence of record that was misstated or ignored that met or equaled the criteria. *See*, *e.g.*, *Sims v. Barnhart*, 309 F.3d 424, 429-30 (7th Cir. 2002).

Plaintiff argues that: (1) the ALJ performed a perfunctory analysis of Listing 12.03 which covers schizophrenic, paranoid and other psychotic disorders[4]; (2) the ALJ erred in evaluation of the paragraph B criteria; and (3) the ALJ's Listing and RFC findings were not supported by the state agency consultants.

**A. Paragraph B Criteria**

At step three, the ALJ analyzed Listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma and stressor related disorders) and found that Plaintiff did not meet these listings because she did not satisfy the paragraph B criteria. To satisfy the paragraph B criteria, Plaintiff must show an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) understanding, remembering or applying information; (2) interacting with others; (3)

---

[4] Even though the ALJ found that Plaintiff's schizoaffective disorder, bipolar type, was a significant impairment, Listing 12.03 (schizoaffective spectrum and other psychotic disorders) was not analyzed. Plaintiff asserts that she met the paragraph A criteria for Listing 12.03, a contention that the Commissioner does not contest. The Commissioner argues instead that the ALJ's failure to analyze the paragraph A factors of Listing 12.03 was harmless error because the ALJ found that Plaintiff did not meet the B criteria which is required in order to meet Listing 12.03. The Court will thus focus on Plaintiff's allegations of error with respect to the ALJ's analysis of the paragraph B criteria.

3

concentrating, persisting or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00(E). The ALJ found that Plaintiff was only moderately limited in two of the four areas of mental functioning and only mildly limited in the remaining two areas. Plaintiff argues that the ALJ ignored entire lines of evidence in each of the four paragraph B areas and as a result the ALJ's decision should be remanded.

1. **Understanding, remembering, or applying information**

The ALJ found that Plaintiff was only mildly limited in this category. The ALJ noted that Plaintiff did not have any diagnosed neurocognitive or neurodevelopmental disorder,[5] Plaintiff had completed twelfth grade with no special education services, and Plaintiff's memory was intact at most of the mental status examinations contained in the record. Plaintiff argues that the ALJ improperly ignored various findings in the record that support that Plaintiff's judgment and insight were impaired. The Commissioner does not deny that part of the paragraph B1 criteria includes an analysis of Plaintiff's ability to use reason and judgment to make work-related decisions. 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00(E). However, the ALJ does not discuss significant findings related to Plaintiff's judgment and insight. For example, in August of 2016 during an inpatient psychiatric hospitalization, Plaintiff's judgment and insight were assessed as "very poor." R. 332. In early 2018, Plaintiff was hospitalized again after reportedly threatening to kill her baby. At that point, her judgment and insight were described as poor and impaired. On September 11, 2018, her clinician described her insight and judgment as impaired. She was delusional, obsessional, and confused. R. 380-381. Again, on October 30, 2018, her judgment and insight were noted to be

---

[5] It is unclear to this Court how these two findings have any significant applicability to the B1 criteria. Certainly, findings such as poor memory and poor judgment arise in mental health conditions that do not involve a neurocognitive or neurodevelopmental disorder. Also, the alleged onset date for Plaintiff's disability is June 30, 2012. Thus, it is unclear what relevance Plaintiff's condition in high school would have here.

4

impaired. R. 364. On November 27, 2018, Plaintiff was "still psychotic with no change in [her] symptoms." R. 393. Her son had recently been removed from her care by DCFS.

The ALJ does not mention these findings related to Plaintiff's poor judgment and insight in his decision. By failing to do so, the ALJ ignored an entire line of evidence contrary to his findings. *See Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) ("[T]he ALJ may not ignore an entire line of evidence that is contrary to the ruling… Otherwise it is impossible for a reviewing court to tell whether the ALJ's decision rests upon substantial evidence.") (citation omitted). The Commissioner attempts to make some *ad hoc* rationalizations for this omission by arguing that the findings of very poor judgment and insight were made during her two psychiatric hospitalizations in 2016 and 2018. However, the ALJ did not cite this as a reason for not factoring findings of impaired judgment into the paragraph B1 reasoning and, as a result, this argument violates the *Chenery* doctrine, *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88, (1943), which prohibits agency lawyers from defending the agency's decision on grounds that the agency itself had not embraced. Nonetheless, as the above examples show, impaired judgment and insight were noted by clinicians both during in patient hospitalizations and after discharge. The Commissioner also points to findings in the record where Plaintiff's judgment was noted to be "fair" and argues that fair is generally understood to mean "sufficient but not ample" or "adequate." Def's. Resp. at 10, Dkt 24. However, the ALJ made no reference to *any* findings regarding Plaintiff's judgment or insight. As it stands, it is impossible for this Court to determine if the ALJ factored the findings relating to Plaintiff's insight and judgment into her analysis of the B1 criteria. Without confronting this evidence and discussing why it did not support more than a mild limitation in this area, the Court cannot trace the path of the ALJ's reasoning here. On remand in evaluating the B1 factors, the ALJ shall assess the findings in the record relating to Plaintiff's judgment and insight.

### 2. Interacting with others

In this category the ALJ assessed a moderate limitation. The ALJ stated that the evidence indicated that:

> [T]he claimant was generally cooperative and she made eye contact on examinations, except it was inconsistent sometimes, such as when exacerbations of symptoms required inpatient treatment. She reported a history of guilty plea for criminal damage to property in 2016 (also arrested for drug paraphernalia that was dropped); and she reported an Order of Protection was filed against her in Kane county in 2015. However, she also reported she was starting a new job as a housekeeper at a local motel and she was social with staff and peers during an inpatient hospitalization (Exhibit 3F/ 42-43).
>
> In addition, she has no documented history of being fired due to not getting along with others at work. She has had some significant relationship issues in the past, and she currently reported experiencing anxiety even on medication, but the claimant also endorsed social support and she was staying with friends. She did not drive, but she was able to use public transportation (Exhibit 6F/48) On balance, therefore, the undersigned concluded the limitation is not "marked" but it is more than "mild." The claimant has a moderate limitation in interacting with others.

R. 18-19.

Plaintiff argues that once again the ALJ ignored entire lines of evidence concerning her ability to interact with others. First, Plaintiff points to her auditory hallucinations. Plaintiff had numerous reoccurring instances of reporting auditory hallucinations and, while her treatment notes reflect that these auditory hallucinations interfered with her ability to interact with others, R. 397, the ALJ does not discuss them in the context of her paragraph B2 analysis. The record shows that, in addition to her reports of auditory hallucinations during her two inpatient hospitalizations in 2016 and February of 2018, in July and August of 2018 Plaintiff reported to treatment providers at Sinnissippi Center that she hears people in her head and that the voices in her head make her angry. R. 342. She also reported being preoccupied with the voices. R 345. On October 2, 2018, she reported having trouble interacting due to constantly hearing things. She was noted to be

6

disorganized and delusional. R. 397. On October 18, 2018, Plaintiff was noted to be unstable and psychotic with delusions and auditory features. R. 369. On October 30, 2018, she reported that the voices were very distracting, and she was noted to be responding to the voices out loud. She was noted to be unstable, with psychotic features including delusions and auditory hallucinations. R. 367. She was also noted to be paranoid, thinking people are lying to her. She also reported being able to divine the future. She reported her young son had been removed from her care recently. R. 393. On November 27, 2018, Plaintiff was noted to still be psychotic with no change in symptoms. R. 393.

The Commissioner argues that Plaintiff's hallucinations: (1) are more appropriately considered in the B3 criteria; (2) were in fact considered by the ALJ; and (3) are subjective allegations insufficient to establish disabling limitations. However, the Commissioner admitted that the record contained evidence of actual observation of hallucinations by a mental health provider. R. 369. There is additional evidence of such observations in the record. R. 393, 395. Regarding the Commissioner's argument that Plaintiff's hallucinations were considered by the ALJ, she argues as follows:

The ALJ noted the following about plaintiff's hallucinations:

- In March 2019, Plaintiff said her hallucinations were not an issue and caused no functional issues, given the effectiveness of Risperdal (AR 23 (*citing* AR 625));

- In April 2019, Plaintiff stated that her auditory hallucinations had been minimal and that nothing had bothered her over the past few months (AR 23 (*citing* AR 589));

- Mental status examination in June 2019 produced no hallucinations or other abnormal thoughts; at that time, Plaintiff even told her therapist that the Risperdal had stopped the voices" (AR 24 (*citing* AR 566, 585)).

There are several problems with the Commissioner's arguments here. First, compare these three examples with the many examples listed above where Plaintiff is reported and observed to

7

be experiencing auditory hallucinations, was diagnosed as being psychotic, and was unstable. These more significant findings of hallucinations and psychosis do not appear in the ALJ's opinion. This is classic cherry-picking and, as the Seventh Circuit has cautioned, "cherry-picking is especially problematic where mental illness is at issue, for a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about [his] overall condition." *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) (internal quotations omitted). Because the ALJ did not mention the more significant evidence of hallucinations and its reported effect on her ability to interact with others, this Court is left to speculate whether the ALJ saw this evidence and yet did not believe it affected Plaintiff's ability to interact with others, overlooked this evidence, or failed to factor it into the analysis for some other unspecified reason. Remand is thus warranted for the ALJ to discuss the effect Plaintiff's auditory hallucinations and psychosis has on her ability to interact with others. Further, the Commissioner argues, and this Court agrees, that Plaintiff's hallucinations and psychosis are also relevant to the B3 analysis of concentration, persistence and maintaining pace. Therefore, on remand the ALJ shall also analyze what, if any, effect her auditory hallucinations and psychosis have on this area of functioning.

Plaintiff also argues that the ALJ failed to recognize that she was frequently paranoid and suspicious – factors that are relevant to analyzing the B2 criteria. The Commissioner does not respond to this argument. Suspiciousness or paranoia are relevant factors to the B2 analysis. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(E) (interacting with others refers to abilities to relate to and work with others, an example of which includes "keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness"). The record does make significant reference to Plaintiff's paranoia both as set forth above and at various other places in the record. *See, e.g.*, R. 372, 380. Yet no mention of Plaintiff's paranoia or suspiciousness is

mentioned by the ALJ in her paragraph B2 analysis or elsewhere in her opinion. Again, this is an entire line of information that the ALJ did not discuss. On remand, the ALJ shall analyze what, if any, effect Plaintiff's paranoia has on her ability to interact with others.

Finally, Plaintiff argues that the ALJ's listing findings and its RFC are not supported by the state agency consultants' opinions. The ALJ stated that she concurred with the state agency consultants to the extent that they found that Plaintiff does not meet or equal any mental health listings. However, these reports suffer from the same cherry picking that the ALJ succumbed to. Plaintiff argues that the consultants overlooked Plaintiff's significant issues with delusions and hallucinations and, as such, they were not factored into the paragraph B findings made by the consultants. Not so, says the Commissioner, and she points to the consultants' reference to two notes: one from March 3, 2018 noting no delusions or hallucinations, and a second note dated March 2019 where Plaintiff reported her hallucinations were not an issue. However, none of the Plaintiff's episodes of auditory hallucinations, documented psychosis, or paranoia are referenced by the consultants and the report reads as if these issues never occurred.

This case is remanded so that the ALJ can evaluate Plaintiff's impaired judgment, psychosis, auditory hallucinations, and paranoia in the context of the step three analysis. By remanding the case this Court is not directing that any specific finding is warranted. Rather, the Court is remanding so that the ALJ can analyze the above factors in the context of the paragraph B analysis in such a way that the Court can follow the path of the ALJ's reasoning regarding the impact her mental health conditions have on the paragraph B criteria.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, the Commissioner's motion is denied, and the case is reversed and remanded for further proceedings consistent with this opinion.

Date: August 4, 2022	By:	_____
	Lisa A. Jensen
	United States Magistrate Judge